IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD B. WATTS, et al.,<br><br>    Defendants.<br>_____/ | No. CR 02-0053 CRB<br><br>**MEMORANDUM AND ORDER RE: SPEEDY TRIAL ACT** |

The government indicted defendant Richard Watts for marijuana offenses. After Watts' trial was severed from his co-defendant, the government took no steps to prosecute Watts' case for nearly three and one-half years. Now pending before the Court is Watts' motion to dismiss the charges against him for violation of the Speedy Trial Act and his Sixth Amendment right to a speedy trial. After carefully considering the record in this case, the parties' briefs, and the parties' arguments made at the hearing on Watts' motion, the Court concludes that the Speedy Trial Act was violated and that such violation warrants dismissal with prejudice.

## BACKGROUND

**A.  The activity (or lack thereof) in Watts' case**

On February 28, 2002, the government indicted Watts along with Kenneth Hayes and Edward Rosenthal for various felony marijuana offenses. Watts obtained new counsel,

Tony Serra, in June 2002 and in July trial was scheduled to commence on December 2, 2002 for Watts and his co-defendant Rosenthal. (Hayes had not made an appearance as he was and remains a fugitive). In November the Court continued the trial to January 20, 2003.

The following month Watts filed a motion to continue the trial and pretrial motions on the ground that he had sustained life-threatening injuries in a car accident. At a scheduling conference on January 6, 2003, the Court severed the trial of Watts from Rosenthal in light of Watts' present inability to proceed to trial. At a subsequent hearing a couple of days later the Court denied all of Watts' pending pretrial motions, including a motion to suppress.

One week later Watts' counsel filed a declaration as to Watts' medical status. Counsel averred that Watts had made a "miraculous" recovery from his injuries sustained in the car accident and that he had been released from the hospital at the end of the previous month. Counsel noted, however, that while Watts was hospitalized he had become addicted to painkillers and was presently seeking to enter a residential rehabilitation facility. Counsel represented that as a result of the addiction, Watts did not "have the mental or physical astuteness" necessary to appear in court. A few days later counsel submitted Watts' medical records as supplemental exhibits to his declaration.

Trial proceeded as scheduled against Watts' co-defendant Rosenthal, and on January 31, 2002, a jury convicted Rosenthal. The Court subsequently denied Rosenthal's motion for a new trial and sentenced Rosenthal in June 2003. Rosenthal appealed his conviction and the government appealed his sentence. In May 2006, the Ninth Circuit reversed Rosenthal's conviction based on jury misconduct, but affirmed the judgment in all other respects. The Court set a status conference in the case for August 30, 2006, and Rosenthal along with Watts were ordered to appear. As Watts' counsel, Tony Serra, was no longer available, Watts retained new counsel on September 15, 2006, and at counsel's first appearance before the Court on September 27, 2006 she advised the Court that she intended to file a speedy trial motion on Watts' behalf.

Between Watts' appearance on August 30, 2006, and the severance of Watts' trial from Rosenthal's trial in January 2003--a period of more than three and one-half years--the

government took no steps whatsoever to prosecute Watts; it did not even make a single inquiry into the status of Watts' health. The docket reflects that during this three and one-half year period, the only activity in the case was Watts' two requests for modification of his conditions for pretrial release: the first request was made and granted in May 2005, and the second request was made and granted in April 2006. The government did not oppose either request.

**B.    The superseding indictment**

The day after Watts filed his speedy trial motion (and three weeks after Watts' counsel announced that she intended to file such a motion) the government filed a superseding indictment against Rosenthal, Hayes and Watts. The superseding indictment includes what the government characterizes as "revisions" of Counts 2, 3, and 4 of the original January 2002 indictment, as well as what it characterizes as "new counts," that is, counts not included in the original indictment.

**C.    The motion to dismiss**

Watts moved to dismiss all of the counts against him in the original indictment on the ground that the government violated the Speedy Trial Act and his Sixth Amendment right to a speedy trial. In light of the subsequent superseding indictment, in his reply Watts argues that all counts in the superseding indictment, including the new counts, should be dismissed. At oral argument the Court explained that it will presently consider Watts' motion as it relates to the counts in the original indictment and their reappearance in the superseding indictment; Watts must supplement this motion to address the new counts.

**DISCUSSION**

The Speedy Trial Act requires that a defendant be tried within 70 days of his first appearance in court. United States v. Hall, 181 F.3d 1057, 1060 (9th Cir. 1999) (citing 18 U.S.C. § 3161(c)(1)). "The Act contains certain exclusions that toll the running of the 70 days." Id. (citing 18 U.S.C. § 3161(h)). If a defendant is not brought to trial within the time limits, the trial court must grant the defendant's motion to dismiss for violation of the Speedy Trial Act. Id. (citing 18 U.S.C. § 3162(a)(2)).

3

Watts emphasizes that the Court specifically excluded 39 days pursuant to section 3161(h); thus, over the past four and one-half years the 70 days has long run. The government contends that with the exception of six days at most, no time ran between the date of the indictment and January 16, 2003. Even if the Court assumes that time was wholly excluded between the date of the indictment and May 2003, the date the Court finds Watts had sufficiently recovered from his car accident to stand trial, Watts should have been brought to trial by some time in August 2003–more than three years ago.

The government's assertion that the Speedy Trial Act has remained tolled "resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial" is unpersuasive. 18 U.S.C. § 3161(h)(4). As the government candidly admitted at oral argument, it has no evidence to contradict Watts' declaration that he was physically and mentally capable of standing trial by May 2003 at the latest. Moreover, Watts' assertion is consistent with the record as a whole. In January 2003 Watts' then-counsel advised the Court and the government that Watts had had a "miraculous recovery" from his car accident, but that in the course of his hospitalization he had become addicted to pain killers. Counsel also reported that Watts was seeking residential treatment for his addiction. In addition, through-out the three and one-half year delay in Watts' case, Watts regularly reported to pretrial services. The government can identify nothing in those reports that remotely suggests that Watts was "mentally incompetent or physically unable to stand trial." To the contrary, in the December 2004 report the government attached to its opposition the pretrial officer notes that Watts reported that he had been to a party and driven a friend home, hardly the conduct of one "mentally incompetent and physically unable to stand trial." Accordingly, the Court finds that no time is excludable from May 2003 to the present pursuant to section 3161(h)(4), and therefore Watts' right under Speedy Trial Act to be brought to trial within 70 days has been violated by more than 1000 days. Watts' motion to dismiss must be granted.

The next question, then, is whether dismissal should be with or without prejudice. In making this determination, the Court must consider three factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of

a reprosecution on the administration of this chapter and on the administration of justice." United States v. Pena-Carrillo, 46 F.3d 879, 882 (9th Cir. 1995) (citing 18 U.S.C. § 3162(a)(1)).

The crimes with which the government originally charged Watts, manufacturing marijuana offenses, are serious, but not so serious that they required Watts' pretrial incarceration; this factor does not strongly favor dismissal with or without prejudice. The Court notes, however, that the government by its inaction has demonstrated to the Court, the defendant and the public that it does not consider Watts' alleged crimes as particularly serious: for more than three and one-half years the government took no steps-- not even a single phone call to inquire as to Watts' health--to prosecute this action.

The second factor weighs strongly in favor of dismissal with prejudice. The government chose not to submit a declaration in opposition to Watts' motion to dismiss; in other words, it has not proffered any explanation for its lengthy delay in prosecuting this action. The Court's findings must therefore be based on inferences drawn from the circumstances of the case. Those circumstances suggest, and the Court finds, that the government's failure to take any steps to prosecute Watts since the severance of his trial was not "inadvertent," Pena-Carrillo, 46 F.3d at 882, or "an isolated unwitting violation." United States v. Taylor, 487 U.S. 326, 338 (1988). Rather, after the Court severed Watts' trial, the government at some point decided not to prosecute Watts unless and until Rosenthal's conviction was reversed.

The circumstances that support the Court's finding are as follows. First, after the Court severed Watts' trial the government did not make any effort to prosecute Watts until *after* Rosenthal's conviction was reversed, more than three years later.

Second, the government could not have "forgotten" about Watts. Watts regularly reported to pretrial services and in May 2005 his counsel asked government counsel to stipulate to a modification of Watts' conditions of pretrial release. Moreover, the government claims in its opposition that in February 2006 the Marin County District Attorney's Office asked the government to grant Watts use immunity in connection with his

5

testimony in a state court case. The government agreed to such use immunity. The pretrial services report submitted by the government also shows that in December 2004 pretrial services contacted the government to inquire as to the status of Watt's case. Government's Opposition, Exh. G at p. 2 ("A message was left for [government counsel] regarding the defendant's positive drug test and also to inquire about the defendant's criminal matter").

Third, the government was aware of Watt's presence in the Northern District of California as Watts regularly reported to pretrial services and the conditions of his pretrial release preclude him from traveling outside the District.

Fourth, the government does not contend that it in good faith believed Watts was physically and/or mentally unable to proceed with trial. It cannot make such a contention in light of its complete failure to make any inquiry into Watts' health–even when Watts' counsel spoke to the government about Watts' request for modification of the conditions for pretrial release.

Fifth, the government denies that it delayed the prosecution of Watts so that it would have the benefit of the Ninth Circuit's decision in Rosenthal's appeal and the Supreme Court's decision in Raich. See Opposition at 10 ("The government certainly did not seek or obtain a tactical advantage by not paying closer attention to Watt's situation while the Rosenthal appeal was pending"). Even if that had been the reason for the government's delay, the government cannot unilaterally "stay" a criminal prosecution. A stay is appropriate only when ordered by a court after the defendant is given notice and an opportunity to be heard.

These circumstances strongly suggest that the government would not have pursued the prosecution of Watts but for the retrial of Rosenthal. The government does not cite any case, and the Court is aware of none, that would make a dismissal without prejudice appropriate in such a case.

The third factor weighs somewhat in favor of dismissal with prejudice. Permitting a new prosecution in a case in which the government offers no explanation for three and one-half years of inaction would give the government little incentive to zealously comply with its

6

Speedy Trial Act obligations. This is especially true where, as here, the government has already reindicted the defendant and does not have a statute of limitations problem. See Taylor, 487 U.S. at 342.

The length of the delay and the concomitant prejudice to Watts from the restrictions on his liberty are additional factors supporting dismissal with prejudice. See Taylor, 487 U.S. at 340, 343. "[I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." Taylor, 487 U.S. at 340 (internal quotation marks and citation omitted). During the period of the government's inaction Watts could not leave the Northern District of California, which, among other things, meant that he could not visit his mother in Pennsylvania; he also had to submit to drug testing, regularly report to pretrial services and place a cash bond.

The Court rejects the government's assertion that dismissal without prejudice is warranted because Watts was responsible for "derailing" his initial joint trial with Rosenthal by being involved in a life-threatening car accident. The delay resulting in the violation of the Speedy Trial Act occurred after Rosenthal's trial and after Watts recovered from his car accident. There is no evidence in the record that suggests that Watts is in any way responsible for that delay. Moreover, the government's bald assertion that Watts should have come forward and asked to be tried is, unsurprisingly, unsupported by citation to any relevant legal authority. The lone case cited by the government, Barker v. Wingo, 407 U.S. 514 (1972), provides to the contrary: "A defendant has no duty to bring himself to trial; the [government] has that duty." Id. at 527. The Court is not aware of any authority that requires a defendant to calendar himself for trial when the government has demonstrated complete indifference to proceeding with the prosecution. The first time Watts appeared with counsel before this Court since his trial was severed he asserted his speedy trial rights; such a demand was timely and sufficient.

7

The government also speculates that had Watts been scheduled for trial he would have moved to continue the trial pending resolution of Rosenthal's appeal and the Supreme Court's decision in Raich. The short answer is that we will never know what Watts would have done had the government pursued his case because the government did not give him the opportunity to make such a decision.

Finally, at oral argument the government claimed that even if the dismissal is with prejudice, such a dismissal does not bar any of the counts in the superseding indictment, including the counts that the government characterizes as "revisions" of counts in the original indictment. Such an argument, if accepted, would make a dismissal with prejudice meaningless; the Court declines the government's invitation to engage in such sophistry.

## CONCLUSION

Watts' motion to dismiss counts 2, 3 and 4 of the superseding indictment (revisions of counts 3, 4 and 2 respectively of the original indictment) for a violation of the Speedy Trial Act is GRANTED with prejudice. The Court will consider Watts' motion as it relates to the new counts after Watts has filed his supplemental memorandum in support of dismissal of such counts and the government has filed its opposition.

**IT IS SO ORDERED.**

Dated: November 1, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE